## GILMORE v. CHAPMAN. (No. 85.)

(Court of Civil Appeals of Texas. Eastland. Jan. 15, 1926.)

**1. Banks and banking ⬅49(8)—Evidence held not to show defendant was stockholder of insolvent state bank.**

Evidence that stock was issued in defendant's name, but was never delivered to him, nor receipted for, and that it remained in possession of bank, or officials thereof, *held* not to show that he was stockholder of insolvent state bank.

**2. Trial ⬅350(1)—Submission to jury of mixed question of law and fact held error.**

In suit to recover assessment on share of bank stock, where issue as to whether defendant on named day or within 12 months prior thereto owned stock in the bank was one of law and fact, submission thereof to jury *held* error.

Appeal from District Court, Eastland County; Elzo Been, Judge.

Suit by J. L. Chapman, as Banking Commissioner in charge of the Breckenridge State Bank, against M. J. Gilmore. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

S. W. Pratt, of Cisco, and G. W. Dunaway, of Ranger, for appellant.

W. J. Rogers, of San Antonio, and M. E. Lawrence, of Eastland, for appellee.

LITTLER, J. [1] M. J. Gilmore was sued by J. L. Chapman, as banking commissioner in charge of the Breckenridge State Bank of Breckenridge, Tex., to recover an assessment of $100 per share on 6⅔ shares of stock, made against said M. J. Gilmore for his alleged individual liability as a stockholder assessed on 6⅔ shares of the capital stock of said bank; said bank being under the process of liquidation by said banking commissioner.

The defense in said case was that the said Gilmore was not a stockholder in said bank, and therefore not liable for such assessment.

The case was submitted to the jury on two special issues as follows:

No. 1. "Did the defendant, M. J. Gilmore, on the 12th day of November, 1921, or within 12 months prior thereto, own stock in the Breckenridge State Bank?"

No. 2. "Did the defendant, M. J. Gilmore, authorize the issuance of a certificate of stock in the Breckenridge State Bank to him on November 12, 1921, or within one year prior thereto?"

The jury answered each issue in the affirmative.

The undisputed facts were that Gilmore was a stockholder in the Guaranty State Bank of Breckenridge, Tex., said bank becoming insolvent, and that said Gilmore had paid an assessment on his stock of $100 per share; that thereafter the state banking commissioner had conveyed to the Breckenridge State Bank all the assets of the Guaranty State Bank; that a self-appointed committee of stockholders of the Guaranty State Bank and the Breckenridge State Bank agreed that the original stockholders in the Guaranty State Bank should receive stock in the last-named bank equal to one-third of the stock they had owned in the Guaranty State Bank, and upon which they had paid an assessment, said new stock to be issued out of a proposed increase of the capital stock of the Breckenridge State Bank.

The undisputed facts also show that Gilmore, at the request of some one representing the Breckenridge State Bank, delivered to said bank his old stock certificate, upon which he had paid an assessment on account of the insolvency of the Guaranty State Bank; that said stock was delivered to the Breckenridge State Bank by the son of defendant, Gilmore, and there was no testimony whatever to the effect that Gilmore ever contracted for, asked for, or agreed to accept, any stock in the Breckenridge State Bank, but, to the contrary, said he did not want any stock in the new bank, stating that he had had all the banking experience that he wanted and did not want said stock; that said stock was issued in the name of Gilmore on the 8th day of November, 1921, but was never delivered to Gilmore and was never receipted for by Gilmore, and that said stock remained in the possession of said bank, or the officials thereof, and is now in the possession of state liquidating agent, who was liquidating the assets of said bank; that said bank closed its doors about noon on the 12th day of November, 1921; that said Gilmore did not know that said stock had been issued, never had heard of it, and never accepted said stock, and knew nothing about same until he was served with citation in this suit.

It is insisted that the evidence did not show he was such a stockholder. Taking the evidence as a whole, we think it failed to show that Gilmore became a stockholder of the bank.

No evidence was introduced even indicating that he had ever contracted for said stock, ever paid anything for same, or had ever received any stock.

Our banking laws are copied almost verbatim from our national banking laws, and in the case of Hodge v. Cushing, 285 F. 158, decided by the Circuit Court of Appeals of the Fifth District, under evidence very similar to the facts in the case at bar, it was held that the alleged stockholder was not liable for assessment on the shares of stock alleged to be owned by him.

[2] Under the case above referred to and the decisions cited thereunder, we conclude that there was no evidence to support the finding of the jury on the special issues sub-

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

mitted and that the court erred in submitting special issue No. 1, as said issue was a mixed question of law and fact.

On account of said, error, the judgment of the lower court is reversed and remanded.